Ellis THOMAS and Eunice Crouch,
Appellants,

v.

STATE of Alaska, Appellee.

Nos. 1888, 1854.

Supreme Court of Alaska.

May 13, 1974.

Herbert D. Soll, Public Defender, Lawrence J. Kulik, Asst. Public Defender, Anchorage, for appellants.

John E. Havelock, Atty. Gen., Juneau, Joseph D. Balfe, Dist. Atty., Stephen G. Dunning, Asst. Dist. Atty., Anchorage, for appellee.

Before RABINOWITZ, C. J., ERWIN, BOOCHEVER and FITZGERALD, JJ., and DIMOND, Justice pro tem.

## OPINION

FITZGERALD, Justice.

Ellis Thomas and Eunice Crouch were charged in a joint indictment with three counts of illegal sale of heroin.[1]  The sales were made to an addict who was then working as an informer for the police. Before each transaction the informer was searched to forestall allegations that he had possession prior to the sale.  On two occasions the transactions were made in the actual presence of the undercover officer.  However, the last sale was not consummated in the immediate presence of the officer who by then, according to the informer, was suspected of working with the police.

At trial, the state produced as its major witness the undercover officer.  The informer did not testify because, the prosecutor explained, his whereabouts were unknown.  The theory of the defense was that the informer, an addict, had obtained the heroin from his own sources, secreted it on his person and produced it after each alleged purchase in order to curry favor with the police.  Defense tactics consisted largely of attacks on the credibility and motives of the undercover officer, who was himself under indictment for an unrelated crime at that time.  To counter the state's evidence that the undercover officer had observed several of the purchases in the appellants' residence, the defense attempted to show that the officer had never been on the premises by demonstrating his inability to recall several striking characteristics of the residence.

The jury resolved this conflicting evidence in the state's favor, finding Thomas guilty of three counts and Crouch guilty of one count of illegal sale of narcotics.

Crouch and Thomas appeal the conviction, contending that the indictment was insufficient to charge the crimes, and that the jury instructions were fatally incomplete.  In addition, Thomas alleges a denial of his constitutional right of confrontation because the state failed to produce the informer at trial and because the court al-

---

1.  AS 17.10.010 provides:
   "It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, or compound any narcotic drug except as authorized in this chapter."

lowed the undercover officer to assert his privilege against self-incrimination in response to certain questions posed by defense counsel.[2]

## THE INDICTMENT

Each of the three counts in the indictment charged that Crouch and Thomas "did unlawfully and feloniously sell and transfer a narcotic drug, to-wit, heroin" to either the informant or the undercover officer. Crouch and Thomas urge that this language does not import a requirement that they knew of the character of the drug when it was sold, and that this defect in the indictment is fatal to the conviction.

■■■■ The state concedes that an indictment which fails to charge a crime can be attacked for the first time on appeal.[3] The state also concedes that the statute prohibits only the *knowing* sale of or traffic in narcotic drugs, although the statute contains no express provision for a knowledge requirement.[4]

■■■■ An indictment may be insufficient even if couched in the language of the statute, if it omits to charge an essential element of the crime.[5] But an indictment should be read in the light of common sense and should not be vulnerable to attack for technical defects.[6] The fundamental purposes of the indictment are to furnish the accused with a description of the charge against him to enable him to prepare his defense and to permit him to claim double jeopardy in the future should he again be charged with the same offense.[7]

The requirement that every element of the offense should be alleged must be read in the light of this "fairness" approach.[8] Thus it is significant that the appellants make no claim of prejudice in conducting their defense because of the asserted omission.

■■■■ Though it has been said that an indictment charging felonious or unlawful actions does not meet the *scienter* requirement,[9] the weight of authority is clearly that such words are sufficient to alert the accused to the elements of the offense. In State v. Reynolds, 229 Or. 167,

2. These issues were not included in the original statement of points on appeal, apparently through an oversight. Appellant Thomas requested permission to raise these issues after he noted they were not discussed in his appellant counsel's brief on appeal. We have granted Thomas' request in this case so that he will not be prejudiced by communication problems apparently engendered by a change of counsel.

3. *See* Taggard v. State, 500 P.2d 238, 243 (Alaska 1972); Alaska R.Cr.Pro. 12(b)(2). *See also* Fed.R.Cr.Pro. 12(b)(2); United States v. Beard, 414 F.2d 1014 (3rd Cir. 1969).

4. Penal statutes which provide for serious penalties are generally construed to require criminal intent. *See, e. g.,* Davis v. State, 501 P.2d 1026, 1028 (Alaska 1972); Judd v. State, 482 P.2d 273, 280 (Alaska 1971); Speidel v. State, 460 P.2d 77 (Alaska 1969).

5. 1 C. Wright, Federal Practice & Procedure (Criminal) § 125, at 236-7 (1969).

6. Alaska Cr.R. 7(c) provides in part:
"The indictment . . . shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. . . . No indictment is insufficient . . . by reason of a defect or imperfection in matter of form in the indictment, which does not tend to prejudice the substantial rights of the defendant."

7. Stewart v. State, 438 P.2d 387, 390 (Alaska 1968). *See also* Thomas v. State, 391 P.2d 18, 24 (Alaska 1964); 1 C. Wright, Federal Practice & Procedure (Criminal) § 125, at 234 (1969).

8. 1 C. Wright, Federal Practice & Procedure (Criminal) § 125, at 233-34 (1969).

9. Professor Wright makes this assertion, citing United States v. Carll, 105 U.S. 611, 26 L.Ed. 1135 (1882) and Hughes v. United States, 338 F.2d 651 (1st Cir. 1964), *reh. den.* 340 F.2d 609 (1965), but admits there is authority to the contrary even in the federal courts, *e. g.,* Jackson v. United States, 114 U.S.App.D.C. 181, 313 F.2d 572, 574 (1962). 1 C. Wright, Federal Practice & Procedure (Criminal) § 125, at 244-5 (1969).

366 P.2d 524 (1961), the Oregon court held:

"An indictment which charges that a person 'unlawfully and feloniously' performed an act is equivalent to alleging that he knowingly did so, and thus supplies the element of knowledge ·where that element is necessary for averment in the indictment."[10]

While the state's indictment could have been more explicit in this regard, we are unable to conclude that it did not fairly apprise the appellants Crouch and Thomas of the elements of the offenses charged.

## THE JURY INSTRUCTIONS

■ The appellants raise an analogous objection to the jury instructions. According to the appellants, the trial court's failure to instruct the jury that knowledge of the nature of the drug is a necessary element of the offense was error.[11] Appellants took no exception to this failure at the trial, nor did they offer a proposed instruction of their own. Since Alaska Cr.R. 30(a) provides—"No party may assign as error . . . omission [from the charge] unless he objects thereto . . . ."—they

are precluded from appealing on this basis unless they can show that the error amounts to plain error.[12]

■ The crux of the controversy here is whether a failure to instruct on an essential element must always be plain error, or whether probable or actual prejudice from the omission must be shown. There are a number of federal cases which indicate that an error of this type constitutes plain error regardless of prejudice.[13] Opposing these authorities is an array of federal[14] and state[15] cases which either found such an error harmless or reversible only after a showing of prejudice to the defendant. Indeed, this court's opinion in Thomas v. State, 391 P.2d 18 (Alaska 1964), has been cited by the Supreme Court of Maine as support for the "prejudice-required" rule.[16]

In this case, knowledge of the nature of the substance was not an issue. The state's evidence revealed that the informer and the undercover policeman met with Crouch and Thomas several times; each time they represented themselves to be in need of heroin and asked Thomas and/or Crouch to sell them heroin. Evidence presented by the defense, on the other

---

10. 366 P.2d at 526. *Accord,* State v. Hargon, 2 Or.App. 553, 470 P.2d 383, 384 (1970). *Cf.* People v. Mills, 40 Ill.2d 4, 237 N.E.2d 697, 701–702 (1968) ; Haggy v. State, 509 P.2d 936, 939–940 (Okl.Cr.App.1973).
   Black's Law Dictionary (Rev. 4th Ed. 1968) defines "felonious" as "done with intent to commit crime."

11. The court is, of course, under a duty to instruct the jury on the essential elements of the offense. Alaska R.Cr.Pro. 30(b) provides in part:
   "The court shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict . . . ."

12. Alaska R.Cr.Pro. 47(b) provides:
   "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

13. *See* Byrd v. United States, 119 U.S.App. D.C. 360, 342 F.2d 939 (1965) ; Merrill v. United States, 338 F.2d 763 (5th Cir. 1964), cert. den., 386 U.S. 994, 87 S.Ct. 1311, 18 L.Ed.2d 340 (1967). *See also* 2 C. Wright,

Federal Practice & Procedure (Criminal) § 487, at 302 (1969).

14. *E. g.,* United States v. Bryant, 461 F.2d 912 (6th Cir. 1972) ; United States v. Gilbert, 140 U.S.App.D.C. 66, 433 F.2d 1172 (1970) ; United States v. East, 416 F.2d 351 (9th Cir. 1969) ; United States v. Rybicki, 403 F.2d 599 (6th Cir. 1968).

15. *E. g.,* People v. Turner, 22 Cal.App.3d 174, 99 Cal.Rptr. 186 (1972) ; People v. Patterson, 2 Ill.App.3d 902, 274 N.E.2d 467 (1971) ; State v. McKeough, 300 A.2d 755 (Me.1973) ; State v. Keaton, 258 Minn. 359, 104 N.W.2d 650 (1960) ; State v. Morgan, 3 Wash.App. 470, 475 P.2d 923 (1970).

16. State v. McKeough, 300 A.2d 755, 759– 760 (Me.1973).
   The prejudice requirement seems compelled by the general standards for showing plain error, recently summarized by this court in Burford v. State, 515 P.2d 382, 383 (Alaska 1973) :
   "In order for this court to notice plain error, the alleged error must affect substantive rights *and* be 'obviously prejudicial'."
   (footnote omitted and emphasis added)

hand, was intended to show that the informer and undercover policeman had never been in the appellants' home, and of course that the appellants never sold anything to the informer and policeman as alleged.

The jury's verdict indicates that the state's evidence was accepted—the jury obviously believed that Crouch and Thomas were requested to make sales of heroin, and that they did. The appellants' claim was that no sale of anything took place. The inference is compelling that the jury believed that Crouch and Thomas knew what they were selling. Under these facts we see no possibility that the jury's verdict would have been different if the omitted instruction had been given, and therefore no possibility of prejudice to Crouch and Thomas arises from the omission. We find no plain error.

### THE INFORMER'S ABSENCE

■ Appellant Thomas urges that his constitutional right to confront and cross-examine his accusers was violated when the state failed to produce the informer who initiated these heroin sales. Thomas cites no case which holds or implies the existence of a constitutionally-based duty to produce all possible witnesses at trial,[17] nor have we found any. We emphasize that this case does not involve concealment of the name and whereabouts of the potential witness from Crouch and Thomas, nor does it involve allegations of concealment of material evidence favorable to them.[18] The state attempted to locate the informer both prior to and during trial, but these attempts failed. We find no constitutional error under these facts.

17. There is a line of cases in Michigan which require that the prosecution produce all *res gestae* witnesses, but the rule is not purported to be of constitutional dimensions. *See, e. g.,* People v. Harris, 43 Mich.App. 531, 204 N.W.2d 549 (1973). Almost every other court which has considered the question has found that there is no obligation to produce particular witnesses. *See, e. g.,* People v. Ortiz, 195 Cal.App.2d 112, 15 Cal.Rptr. 398 (1961);

### THE FIFTH AMENDMENT SHIELD

■ Thomas' final argument is that he was denied his constitutional right of confrontation when the court allowed the undercover officer to refuse to answer a question because it might incriminate him. This curious role-reversal occurred because the officer was, at the time of trial, facing indictment for burglaries of the state's evidence lockers. Defense counsel questioned the officer as follows:

Q. My question is, whether or not during your association with [the informer] you received any financial benefits coming directly or indirectly from this association?

A. No. sir, I did not.

. . . . . .

Q. Well, my question was, during the period of time that you worked for the police force, did you have occasion to obtain any sources of money, any sums of money, from other than legitimate sources.

INTERJECTION BY OFFICER'S ATTORNEY: I advise the witness not to answer the question.

DEFENSE COUNSEL: May we have a ruling on that, Your Honor?

THE COURT: I said the witness may answer if he can and he's been advised by his attorney. . . .

OFFICER'S ATTORNEY: Fine, I'll just advise. . . . .

THE COURT: May I ask that you

. . . . .

OFFICER'S ATTORNEY: . . . . . . the witness to exercise his rights under the 5th amendment of the constitution of the United States.

State v. Smith, 276 Minn. 565, 150 N.W.2d 868 (1967); Phillips v. State, 183 So.2d 908 (Miss.1966).

18. Such practices would of course raise weighty constitutional problems. *See* Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed. 2d 706 (1972); Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). *See also* Torres v. State, Op. # 1017, 519 P.2d 788 (Alaska 1974).

THE COURT: Very well.

DEFENSE COUNSEL: Your Honor, I would request for the court to direct the witness to answer the question in spite of [this] advice.

THE COURT: I will not do so, [counsel]. You may answer if you wish or you may follow your attorney's advice if you wish.

A. On the advice of my attorney I refuse to answer that question under the 5th amendment.

Defense counsel then abandoned this line of questioning. There was no offer of proof to inform the trial court what was sought to be proved by these questions, nor has Thomas' counsel in this appeal suggested anything other than that trial counsel sought to impeach the general credibility of the witness by showing specific acts of misconduct.

The conflict between a witness' privilege against self-incrimination[19] and the accused's right of effective cross-examination is an uncertain area of the law at this time. In Davis v. Alaska, —— U.S. ——, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), rev'g 499 P.2d 1025 (Alaska 1973), the United States Supreme Court held that an accused's right of confrontation was violated when a trial court of this state refused to allow exploration of a witness' juvenile adjudication and probationary status, where that status had significant potential for in-fluencing the witness' testimony. As we noted in Gonzales v. State, Op. No. 1030, 521 P.2d 512 (Alaska April 12, 1974), the *Davis* decision must not be read so broadly as to totally abrogate the traditional right of trial courts to exercise discretionary control over the type and manner of evidentiary presentation. In *Gonzales* we concluded that, as a general rule, the trial court could properly refuse evidence of stale[20] convictions or juvenile adjudications[21] where these were offered for the purpose of discrediting the witness generally rather than to show some specific potential for bias or prejudice toward the defendant. We must assume that this case fits within the former category, because defense counsel made no attempt to show that the witness' alleged crimes, for which he had yet to be tried, had any tendency to motivate him to testify falsely in this apparently unrelated prosecution.

Another factor which bears on this problem is the extent to which defense counsel can accomplish his objectives without infringing on the witness' privilege. In this case the court permitted questions revealing the witness had been discharged from the police department and was facing indictment for alleged burglaries. If defense counsel was attempting to suggest that the officer might lie at trial to void further straining his relations with the department, this goal was fully accomplished without exploring the details of the alleged crimes.

---

19. U.S.Const. amend. V provides in part:
"No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."
Alaska Const. art. I, § 9 provides in part:
"No person shall be compelled in any criminal proceeding to be a witness against himself."

20. *See* Alaska R.Cr.Pro. 26(f), which restricts generalized impeachment by proof of former crimes to those crimes involving false statements or dishonesty of which the witness was convicted within five years of the date of the proferred testimony.

21. *See* Alaska R.Child.Pro. 23, which provides:
No adjudication, order, or disposition of a juvenile case shall be admissible in a court not acting in the exercise of juvenile jurisdiction except for use in a presentencing procedure in a criminal case where the superior court, in its discretion, determines that such use is appropriate.
*See also*, AS 47.10.080(g):
No [juvenile] adjudication . . . may operate to impose any of the civil disabilities ordinarily imposed by conviction upon a criminal charge, nor may a minor afterward be considered a criminal by the adjudication, nor may the adjudication be afterward deemed a conviction . . . . . The commitment and placement of a child and evidence given in the court are not admissible as evidence against the minor in a subsequent case or proceedings in any other court . . . . .

The exposure of these basic facts thus substantially reduced any need to investigate the particulars of the offenses alleged, at least where defense counsel failed to demonstrate their special relevance to the prosecution at bar.

Our weighing analysis thus leads us to hold that Thomas' right of confrontation was not infringed in this case. In a more compelling case, one where there was a true need to explore facts which were within the ambit of the witness' privilege against self-incrimination, it might be necessary, of course, to accord the defendant the right to require answers to potentially incriminating questions. In such a case steps could be taken to avoid any prejudice to the witness.

All asserted errors having been decided adversely to the appellants Thomas and Crouch, the judgments are affirmed.

CONNOR, J., not participating.