*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0301**

State of Minnesota,
Respondent,

vs.

Charles Carlester Powell,
Appellant.

**Filed November 23, 2015
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CR1317795

Lori Swanson, Minnesota Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Brittany D. Lawonn, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Bobby Joe Champion, Karlowba Adams Powell, Minneapolis, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellant Charles Powell appeals his second-degree controlled-substance conviction, arguing (1) the officer had no reasonable articulable suspicion to justify the traffic stop; (2) the officer conducted an unlawful pat-down search; and (3) the evidence

discovered as a result of the unlawful search must be excluded because the officer's conduct was so outrageous, and the state is seeking to exploit the conduct of its agents. We affirm.

**FACTS**

On June 3, 2013 at 11:00 p.m., Officer Peter Luke Brost and his partner, Officer Tolbert, observed a Cadillac Escalade leave a gas station and proceed onto Edinburg Center Drive in the direction of 85th Avenue. The Escalade stopped in the left lane at a traffic signal at the intersection of Edinburgh Center Drive and 85th Avenue. Officer Brost pulled up adjacent to the Escalade, in the right-turn lane. Officer Brost smelled a very strong odor of marijuana coming from the Escalade.

Officer Brost made a right turn and headed west on 85th Avenue. Officers Brost and Tolbert observed the Escalade turn left into the outside, far right lane of 85th Avenue and "make a lane change without signaling." Officer Brost then made a U-turn and initiated a traffic stop of the Escalade. As he approached the vehicle, Officer Brost again smelled a strong odor of marijuana. Officer Brost identified the driver as appellant Charles Powell and asked him to exit the vehicle. He smelled a strong odor of marijuana coming from appellant's person. Officer Brost had appellant place his hands on top of his head and proceeded to conduct a pat-down search of appellant. While he searched appellant, he was holding on to appellant's hands. Officer Brost provided the following testimony at the April 11, 2014 omnibus hearing:

> [ATTORNEY FOR APPELLANT]: All Right. And so you indicated earlier that you searched [appellant] for weapons, correct?

2

[OFFICER BROST]: I said I searched him.
[ATTORNEY FOR APPELLANT]: So did you search him for weapons?
[OFFICER BROST]: That was one possibility. He smelled like marijuana, that's why I was searching him.

As part of the search, Officer Brost swiped outside appellant's clothes between the flesh of appellant's buttocks with his hand. When he did so, he felt something but was not immediately sure what it was. Officer Brost stated that appellant tensed up "like he was squeezing something to hold it in there." Officer Brost asked appellant what was in his buttocks. Appellant remained tensed and started to pull away. Appellant continued to resist Officer Brost and ran into the street. Officer Brost tazed and subdued appellant with the assistance of his partner. After the officers had handcuffed appellant, Officer Brost's partner pulled appellant's shorts to the side and retrieved approximately seven grams of crack cocaine from appellant's buttocks area.

Before trial, appellant moved to suppress the illegal contraband confiscated from his person. After a contested omnibus hearing, at which appellant did not testify, the district court issued an order determining that the stop was lawful. However, the district court concluded that because Officer Brost did not suspect that appellant was armed and dangerous, the subsequent pat-down search of appellant's person was unlawful. Nevertheless, the district court determined that appellant's attempt to flee Officer Brost constituted an intervening circumstance, so the seized evidence was admissible.

Appellant waived his right to a jury trial and stipulated to certain facts for a bench trial pursuant to Minn. R. Crim. P. 26.01, subd. 4. The district court found appellant guilty of count I, sale of a controlled substance. This appeal follows.

**D E C I S I O N**

**I. The district court did not err in concluding that the stop of appellant's vehicle was supported by reasonable articulable suspicion.**

Appellant contends that the officers lacked reasonable articulable suspicion to stop his vehicle. We disagree.

When reviewing a district court's pretrial order on a motion to suppress evidence, this court reviews the district court's factual findings for clear error and its legal determinations de novo. *State v. Diede*, 795 N.W.2d 836, 849 (Minn. 2011). The detention of an individual during a traffic stop by police, even for a brief period and for a limited purpose, is a seizure that is entitled to constitutional protection. *See Wren v. United States*, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 1772 (1996); *State v. Fort*, 660 N.W.2d 415, 418 (Minn. 2003). The Minnesota Supreme Court has held that a search or seizure during a traffic stop must be reasonable, even when a minor traffic law has been violated, and must satisfy the principles and framework of *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968). *State v. Askerooth*, 681 N.W.2d 353, 363 (Minn. 2004). Analyzing whether a traffic stop constituted an unreasonable search and seizure involves a two-step inquiry. *Id.* at 364 (citing *Terry*, 392 U.S. at 19-20). "First, we ask whether the stop was justified at its inception." *Id.* Second, we ask whether the actions of the police during the stop were reasonably related to and justified by the circumstances that gave rise to the stop in the first place. *Id.*

The district court found, in a well-reasoned order, that Officer Brost had three independent justifications to stop appellant's vehicle: (1) appellant's failure to turn into

4

the nearer and immediate left lane; (2) appellant's failure to signal a turn into that lane; and (3) the smell of marijuana coming from appellant's vehicle. Appellant disputes the first two justifications, arguing that Officer Brost had "no clear vantage point" from which he could have observed appellant's alleged traffic violations. Appellant asserts that he and Officer Brost were separated by a "lane full of other vehicles," which would have obstructed Officer Brost's view. Appellant states that "it defies logic" to believe that Officer Brost could have seen appellant's traffic violations, and, because he could not have observed the traffic violations, the stop must have been the product of "mere whim, caprice, or idle curiosity."

Officer Brost testified that he used his mirrors to "keep[] an eye on [appellant's] vehicle." Officer Brost admitted that, because he was driving, it was impossible for him to always keep his eye on appellant's vehicle. But Officer Brost also stated that he "was paying attention to [his] surroundings" and in particular "a vehicle that [he] was interested in because it [smelled] like marijuana." Moreover, Officer Brost testified that his partner, Officer Tolbert, was also in the patrol car, keeping an eye on appellant's vehicle.

The district court found Officer Brost's testimony that he was able to observe, and in fact did observe, appellant's traffic violations credible. Accordingly, the district court determined that the stop of appellant's vehicle was legitimate, stating, "Officer Brost smelled an odor of marijuana emanating from [appellant's] vehicle and observed [appellant] violate traffic laws." This court does not overturn a district court's findings of fact on appeal unless the findings are clearly erroneous. *State v. Smith*, 448 N.W.2d 550,

5

555 (Minn. App. 1989), *review denied* (Minn. Dec. 29, 1989). There is no evidence in the record to refute Officer Brost's testimony other than appellant's self-serving assertions that Officer Brost's view was obstructed. Therefore, we cannot say that the district court's findings are clearly erroneous.

Finally, the stop of appellant's vehicle was supported by an independent justification, namely, the odor of marijuana. Appellant does not dispute that the officer smelled marijuana or that the odor of marijuana provided an independent basis for the traffic stop. Accordingly, the district court correctly determined that the officers had reasonable articulable suspicion to justify the stop of appellant's vehicle.

## II.     The district court did not err in concluding that the pat-down search of appellant was unlawful.

Appellant asserts, and the state concedes, that the pat-down search of appellant was unlawful. We agree.

Police may stop and frisk a person when: (1) they have a reasonable articulable suspicion that the suspect might be engaged in criminal activity and (2) they reasonably believe the suspect might be armed and dangerous. *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992); *see also Terry*, 392 U.S. at 30. If both of these elements are present, police may conduct a limited search of the outer clothing of a suspect for weapons. *Dickerson*, 481 N.W.2d at 843.

Officer Brost testified that one possible reason he searched appellant was to check for weapons. However, Officer Brost indicated that his primary reason for the search was because appellant smelled like marijuana. Based on his statements, the district court

6

discounted Officer Brost's testimony regarding the former justification and found the latter justification more credible. The district court concluded that "[a]bsent testimony stating, or evidence demonstrating, that the officer was concerned for his safety or that the officer believed [appellant] may be armed and dangerous, the [c]ourt cannot find that the pat-search of [appellant] was permissible under *Terry*." Factual and credibility determinations are within the province of the district court and will not be disturbed on appeal unless clearly erroneous. *State v. Randa*, 342 N.W.2d 341, 343 (Minn. 1984). We discern no error in the district court's findings of fact or conclusion that the pat search was unlawful.

III.    **The district court did not err in concluding that appellant's attempt to flee constituted an intervening circumstance, which rendered the illegally seized evidence admissible.**

Appellant contends that the contraband discovered due to the invalid pat search of appellant must be suppressed as the fruit of an illegal search and seizure because the officer's behavior was so outrageous and because the state is seeking to exploit the conduct of its officers. We are not persuaded.

The district court concluded that the evidence found on appellant's person was admissible because appellant's "flight from Officer Brost was an intervening circumstance sufficient to purge the taint of the illegal search." Both the district court and the state rely on *State v. Ingram*, 570 N.W.2d 173 (Minn. App. 1997), *review denied* (Minn. Dec. 22, 1997). *Ingram* is apposite. While being subjected to an impermissible pat search, Ingram "suddenly shifted his weight and darted out of the [bus] shelter," pushing the officer who was searching him out of the way in the process. *Id.* at 175.

Once the officers at the scene gained control of Ingram, he informed the officers that he was in possession of a pistol. *Id.* The district court in *Ingram* refused to suppress the pistol, concluding that Ingram's attempt to flee "constituted new and intervening facts, giving the officers a sufficient basis to arrest Ingram." *Id.* On appeal, we affirmed, holding, "A defendant does not have the right to resist an unlawful search and seizure," and "Ingram's physical resistance, flight, and subsequent arrest were intervening facts sufficient to support the taking of Ingram's pistol." *Id.* at 179.

Similarly, while being subjected to a pat-down search, appellant began struggling, attempted to flee, and in fact did flee Officer Brost's grasp. Officers Brost and Tolbert apprehended appellant, subdued him, and arrested him for obstruction of legal process. While conducting a search incident to the obstruction arrest, the officers found illegal contraband on appellant's person.

Appellant points to the four-factor test articulated in *State v. Warndahl*, 436 N.W.2d 770 (Minn. 1989) and notes the outrageousness of the officer's conduct as a reason to exclude the illegally obtained evidence. *Id.* at 776 (condemning the police actions of delaying for more than 24 hours before responding to Warndahl's request for counsel and deliberately reinitiating interrogation before counsel was provided). However, Officer Brost's conduct does not rise to the level of outrageousness as in *Warndahl*. *Id.* Appellant further argues that "there is clearly exploitation" in this case, and cites *City of St. Louis Park v. Berg*, 433 N.W.2d 87 (Minn. 1988) and *State v. Bale*, 267 N.W.2d 730 (Minn. 1978), for the proposition that the evidence must be excluded. The principal inquiry under *Berg* and *Bale* is "whether the state is seeking to exploit the

illegality of its agents to gain some advantage." *Berg*, 433 N.W.2d at 90 (Minn. 1988).

Here, there is no evidence that Officer Brost was "deliberately provoking [appellant] into committing a new crime of resisting arrest." *Id.* The district court found that Officer Brost mistakenly believed he had the right to frisk appellant. Appellant, too, has acknowledged that Officer Brost held this mistaken belief.

Finally, appellant contends that he did not attempt to flee. However, appellant did not dispute this fact before the district court. Indeed, the stipulation appellant entered into pursuant to Minn. R. Crim. P. 26.01, subd. 4, states that appellant "began to resist Officer Brost." Whether or not appellant attempted to flee constitutes a factual finding. As previously noted, this court does not overturn a district court's findings of fact on appeal unless it is clearly erroneous. *Smith*, 448 N.W.2d at 555. There is no contrary evidence aside from appellant's self-serving assertions contained in his brief on appeal. As a result, the district court's findings are not clearly erroneous.

**Affirmed.**