*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1085**

State of Minnesota,
Respondent,

vs.

Carl Douglas Smith,
Appellant.

**Filed June 10, 2024**
**Affirmed**
**Worke, Judge**

Aitkin County District Court
File No. 01-CR-22-407

Keith Ellison, Attorney General, Lydia Villalva Lijo, Assistant Attorney General, St. Paul, Minnesota; and

Jim Ratz, Aitkin County Attorney, Aitkin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Peter H. Dahlquist, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Schmidt, Judge; and Harris, Judge.

**NONPRECEDENTIAL OPINION**

**WORKE**, Judge

In this appeal from the final judgment of conviction of aggravated possession of a controlled substance, appellant challenges the district court's denial of his motion to suppress evidence obtained during a traffic stop. We affirm.

**FACTS**

On May 10, 2022, a sheriff's deputy observed a motorcycle without a visible rear taillight. The deputy followed the motorcycle and confirmed that the rear taillight was not visible. He activated his emergency lights and the motorcycle stopped. The deputy exited his squad and, as he approached the motorcycle, he observed a t-shirt covering the rear taillight. The deputy spoke to the driver of the motorcycle—later identified as appellant Carl Douglas Smith—and then took a closer look at the blocked taillight and observed an object similar in shape to a long-gun firearm wrapped in the t-shirt. Other officers arrived at the scene to assist the deputy and they found "numerous illicit items." Respondent State of Minnesota charged Smith with ten counts related to possession of firearms, ammunition, explosive or incendiary devices, and controlled substances which were found during the stop.

Smith moved to suppress the evidence obtained from the stop. He argued that the deputy lacked reasonable, articulable suspicion to stop him because his taillight was visible.

At the contested omnibus hearing, the district court heard testimony from Smith and the deputy. Video and still photos from the traffic stop were admitted as evidence.

The district court denied the suppression motion and "agree[d] with [the deputy']s assertion that the rear taillight was not plainly visible as mandated by Minn. Stat. § 169.50, subd. 1(a)." Accordingly, the district court concluded that, because the deputy saw a motorcycle drive by without a rear taillight plainly visible, he lawfully stopped the

motorcycle. Smith stipulated to the state's evidence for the purposes of appellate review of this pretrial ruling pursuant to Minn. R. Crim. P. 26.01, subd. 4.

The district court, as the finder of fact, found Smith guilty of count one and sentenced Smith to 192 months in prison. The remaining counts were dismissed. This appeal followed.

**DECISION**

Smith argues the district court erred by denying his motion to suppress the evidence obtained during the traffic stop because the deputy lacked reasonable, articulable suspicion to stop Smith's motorcycle.

The Fourth Amendment to the United States Constitution and article 1, section 10, of the Minnesota Constitution guarantee individuals the right to be free from unreasonable searches and seizures. A police officer may, however, initiate a limited investigatory stop without a warrant if the officer has reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). "Whether there is reasonable suspicion is a mixed question of fact and constitutional law." *State v. Lugo*, 887 N.W.2d 476, 487 (Minn. 2016). An officer's observation of a violation of any traffic law, "however insignificant," provides the officer with an objective basis for conducting a stop. *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997).

Here, the deputy stopped Smith's motorcycle because his taillight was obstructed in violation of Minn. Stat. § 169.50, subd. 1(a) (2022). This section provides that "[e]very motor vehicle . . . must be equipped with at least one tail lamp, exhibiting a red light plainly visible from a distance of 500 feet to the rear."

3

Smith specifically contends that his taillight was plainly visible, meaning that the deputy lacked the necessary reasonable, articulable suspicion to justify the stop. This requires us to review a narrow issue—whether the district court made a clearly erroneous factual finding when it determined that the taillight was not plainly visible at the time of the stop.[1]

"When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted). Factual findings are clearly erroneous when, "on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted); *State v. Thompson*, 988 N.W.2d 149, 158 (Minn. App. 2023) (applying *Kenney* in reviewing a criminal matter), *rev. denied* (Minn. June 20, 2023). When reasonable evidence supports the district court's findings of fact, we will not disturb them. *State v. Evans*, 756 N.W.2d 854, 870 (Minn. 2008). In so doing, we do not reweigh the evidence, engage in the finding of fact, or reconcile conflicting evidence. *Kenney*, 963 N.W.2d at 221-22. Instead, we conduct "a review of the record to confirm that evidence exists to support the decision." *Id.* at 222. "Determinations of credibility of witnesses at the omnibus hearing are left to the [district] court, and those determinations will not be overturned unless clearly erroneous." *State v. Smith*, 448 N.W.2d 550, 555 (Minn. App. 1989), *rev. denied* (Minn. Dec. 29, 1989).

---

[1] In district court, Smith conceded that if the taillight was not visible, then the stop was lawful.

As a preliminary matter, we clarify the scope of our review of the record. Smith argues that the taillight was visible throughout the traffic stop and points to evidence in the record from during and after the stop. Both parties raise arguments about how the t-shirt, which was allegedly obstructing the taillight, moved throughout the stop. However, reasonable, articulable suspicion is based on "the facts available to the officer at the moment of the seizure or the search." *Terry*, 392 U.S. at 22. Thus, our review of the record is limited to only the evidence that reflects the visibility of the taillight "at the moment" of the stop. *Id.*

Our careful review of the record indicates that the district court did not clearly err by determining that the taillight was not "plainly visible." Minn. Stat. § 169.50, subd. 1(a). First, at the omnibus hearing, the deputy testified consistently and repeatedly that the taillight was not visible. By basing its factual findings on the deputy's testimony, the district court implicitly found this testimony credible. *See Hoekstra v. Comm'r of Pub. Safety*, 839 N.W.2d 536, 539 (Minn. App. 2013). And this court must defer to that credibility determination unless is it clearly erroneous. *Smith*, 448 N.W.2d at 555. Second, the video footage and photos in the record consistently reflect that over half of the taillight was obscured as the deputy followed Smith, pulled Smith over, and approached the motorcycle.[2] Thus, the district court did not clearly err by determining that the taillight was not plainly visible.

---

[2] We recognize that the quality of some of the photos and videos makes it more difficult to see the taillight. However, in such instances we defer to the district court's credibility determination. *See State v. Amaro*, No. A17-1796, 2018 WL 3966192, *3-4 (Minn. App. Aug. 20, 2018) (where video footage did not show that defendant was not wearing a

This court reviews de novo whether the findings of fact support the legal conclusion that there was reasonable suspicion. *Diede*, 795 N.W.2d at 843. Because the district court did not clearly err by determining that the taillight was not plainly visible, we affirm the district court's finding that the deputy observed Smith committing a traffic violation. And "if an officer observes a violation of a traffic law, no matter how insignificant the traffic law, that observation forms the requisite particularized and objective basis for conducting a traffic stop." *George*, 557 N.W.2d at 578. As a result, the district court did not err by denying Smith's motion to suppress.[3]

**Affirmed.**

---

seatbelt but that video was not a representation of what the officer could actually see due its quality, this court deferred to district court's determination that defendant was not wearing a seatbelt based on officer's testimony, which district court found credible). We cite this nonprecedential case for its persuasive value. *See* Minn. Stat. § 136.01, subd. 1(c) (2022).

[3] Smith raises several arguments in his pro se supplemental brief. However, such arguments are beyond the scope of review because they are not related to the pretrial issue preserved during this stipulated-evidence proceeding. *See* Minn. R. Crim. P. 26.01, subd. 4(f) (stating "appellate review will be of the pretrial issue"). Thus, Smith is not entitled to appellate review of his pro se arguments. *See State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009) (stating that because defendant stipulated to evidence against him, review was limited to the pretrial order denying the motion to suppress).